**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| People for the Ethical Treatment of Animals, Inc., <br>    1536 16th Street, N.W. <br>    Washington, D.C. 20036, <br><br>      Plaintiff, <br>          v. <br><br> United States Department of Agriculture and Thomas Vilsack, in his official capacity as Secretary of the United States Department of Agriculture, <br>    1400 Independence Avenue, S.W. <br>    Washington, D.C. 20250 <br><br>      Defendants. | Case No.: 1:13-cv-1605 |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### INTRODUCTION

1. As established in the scientific literature, bears are particularly susceptible to suffering in captive environments that do not meet their basic needs, including adequate space and enrichment. Abundant evidence has shown that these long-lived animals, who may live up to three decades even in deprived and neglectful captive conditions, suffer greatly from the effects of living in small spaces with inadequate enrichment.

2. Graphic images and reports of bears held in roadside zoos and many other facilities licensed by the U. S. Department of Agriculture ("USDA" or "Agency") confirm that the USDA's implementation of current generic welfare regulations promulgated under the Animal Welfare Act ("AWA") is woefully inadequate to address bears' unique and

complex needs. Bear-specific regulations are therefore necessary to ensure that these animals' most basic needs—including nesting materials, denning opportunities, and the opportunity to forage and bathe—are afforded to bears in captivity.

3. Plaintiff People for the Ethical Treatment of Animals, Inc. ("Plaintiff" or "PETA") submitted a *Petition for Rulemaking to Ensure the Humane Handling, Treatment and Care of Captive Bears Under the Animal Welfare Act* ("Petition," attached hereto as Exhibit A) to the Agency on September 25, 2012, requesting that the Agency initiate rulemaking proceedings to promulgate specific regulations to ensure the humane handling, care, and treatment of captive bears (excluding polar bears, who are already specifically regulated).

4. The Agency was legally required to respond to this Petition but, more than a year later, it has not; further, upon information and belief, the agency has taken no meaningful action whatsoever on the Petition. This abdication of statutorily mandated duties constitutes agency action "unlawfully withheld or unreasonably delayed," 5 U.S.C. § 706(1), in violation of the Administrative Procedure Act ("APA").

5. Accordingly, this suit seeks (i) a judgment declaring that the USDA's failures and unreasonable delays violate its legal duty to take action on the Petition; and (ii) an order compelling the USDA to take required action by a Court-ordered deadline.

## JURISDICTION AND VENUE

6. This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e) as this civil action is brought against an agency of the United States and an officer of the United States acting in his official capacity, and Defendants reside in this district.

## THE PARTIES

8. Plaintiff PETA is a Virginia non-stock corporation and animal protection charity pursuant to Section 501(c)(3) of the Internal Revenue Code, with an office at 1536 16th Street, N.W., Washington, D.C. PETA is dedicated to preventing cruelty and inhumane treatment of animals. Since its inception, PETA has championed ending the use of animals for human amusement, including the use of bears in antiquated roadside zoos.

9. Defendants USDA and Thomas Vilsack, who is sued in his official capacity as the United States Secretary of Agriculture, are responsible for administering the AWA. For the purposes of this Complaint, both defendants together shall be referred to as "USDA" or "Agency."

## FACTUAL ALLEGATIONS AND STATUTORY FRAMEWORK

**A. The Agency Is Responsible for Insuring the Humane Handling, Care, and Treatment of Bears Covered by the AWA**

10. The AWA is set forth at 7 U.S.C. §§ 2131-2159.

11. The AWA is intended "to insure" that covered animals, including animals used for exhibition, are "provided humane care and treatment" and "to assure the humane treatment of animals during transportation in commerce." *Id.* § 2131(1) and (2).

12. In order to accomplish this purpose, the USDA is charged, among other things, with the mandatory obligation to promulgate standards and other requirements governing the humane handling, care, treatment, and transportation of animals covered by the AWA (which includes bears used for exhibition). *Id.* § 2143(a).

**B. The Current Regulatory Framework**

13. Regulations established under the AWA are contained in the Code of Federal Regulations (CFR) in 9 CFR parts 1, 2, and 3.

14. Part 1 contains definitions for terms used in parts 2 and 3; part 2 provides administrative requirements and sets forth institutional responsibilities for regulated parties; and part 3 contains specifications for the humane handling, care, and treatment of animals covered by the AWA.

15. The regulations in part 3 consist of six subparts. Subparts A through E contain specific standards for: dogs and cats (subpart A, 9 C.F.R. §§ 3.1 – 3.12), guinea pigs and hamsters (subpart B, *id.* §§ 3.25 – 3.33), rabbits (subpart C, *id.* §§ 3.50 – 3.58), nonhuman primates (subpart D, *id.* §§ 3.75 – 3.85), and marine mammals, including polar bears (subpart E, *id.* §§ 3.100 – 3.111).

16. Subpart F sets forth general standards for all other warm-blooded animals not otherwise specified in part 3. These general standards cover the handling, care, and treatment for animals as diverse as giraffes, prairie dogs, zebras, and bears and are very broadly worded, dealing with matters such as food, water, and sanitation.

**C. As Currently Implemented, the General Standards in Subpart F Do Not Ensure the Humane Handling, Care, Treatment, and Transportation of Bears**

17. Currently, approximately 500 active USDA licensees—primarily exhibitors—hold bears,. Many if not most of these bears are held at roadside facilities that do not adhere to minimum bear husbandry standards and force bears to live in conditions that fail to meet the bears' most basic needs and are associated with serious health problems and psychological suffering.

18. Compelling evidence gathered over the past two decades makes clear that the USDA's implementation of the generic regulations in subpart F is simply inadequate to insure humane handling, treatment, and care of bears as required by the AWA—particularly

at such roadside facilities where bears are forced to live in deplorable conditions in contravention of the most basic bear husbandry standards.

### D. To Ensure Compliance with the AWA's Objectives, PETA Petitioned the Agency to Promulgate Bear-Specific Regulations

19.     The APA grants any "interested person" the right to petition a federal agency for the issuance of regulations. 5. U.S.C. § 553(e); *see also* 7 C.F.R. § 1.28 (USDA's regulatory implementation of this statutory right).

20.     Consistent with this right, on September 25, 2012, PETA submitted its Petition to the Agency, requesting that the Agency commence rulemaking proceedings to establish specific regulatory standards that comply with the intent and purpose of the AWA to "insure" the humane handling, care, and treatment of captive bears.

21.     The requested rulemaking would amend 9 C.F.R. part 3 by adding specific standards for captive bears of all species, except polar bears, who are already specifically addressed. *See* Petition (Exhibit A).

### E. The Agency Had a Mandatory Duty to Act On the Petition "Promptly" and "Within a Reasonable Time"

22.     A federal agency presented with a petition pursuant to 5 U.S.C. § 553(e) does not have the option to simply ignore it, but is required to act on it, by deciding whether to grant or deny the petition "within a reasonable time." *See id.* § 555(b). This requirement is mandatory. *Id.* ("With due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency **shall** proceed to conclude a matter presented to it." (emphasis added)). Regulation, further mandates that the USDA give "prompt consideration" to all such petitions and "notif[y] [petitioners] promptly of the disposition of made of their petitions." 7 U.S.C. § 1.29.

23. Accordingly, upon receipt of the Petition, the Agency did not have the option to do nothing; it was required by law to either deny or grant the Petition promptly and within a reasonable time.

**F. The Agency Violated Its Mandatory Duty by Failing to Act Promptly and Within a Reasonable Time**

24. In derogation of its mandatory legal obligation to take action promptly and within a reasonable time, to date, the Agency, upon information and belief has not taken any action in response to the Petition beyond acknowledging receipt. To date, the Agency has not granted or denied the Petition.

25. This abdication of its statutory duties constitutes agency action "unlawfully withheld or unreasonably delayed," 5 U.S.C. § 706(1), in violation of the APA.

**G. The Court Has the Authority to Compel Agency Action Unlawfully Withheld Or Unreasonably Delayed**

26. The APA entitles any person "adversely affected or aggrieved by agency action" to judicial review, 5 U.S.C. § 702, unless the relevant statute precludes judicial review or "agency action is committed to agency discretion by law," *id.* § 701(a)(2), neither of which apply here.

27. "[A]gency action" is defined in § 551(13) to include "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act."

28. The APA provides relief for a "failure to act" in § 706(1) by specifying that: "The reviewing court shall . . . compel agency action unlawfully withheld or unreasonably delayed."

**CLAIM FOR RELIEF**

29. Plaintiff incorporates herein the allegations set forth in paragraphs 1 through 28.

30. The Agency has no discretion to ignore Plaintiff's Petition but instead has a mandatory duty to either grant or deny the Petition promptly and within a reasonable period of time.

31. As described herein, the Agency's failure to take required action with respect to the Petition for more than a year constitutes agency action "unlawfully withheld or unreasonably delayed," in violation of the APA, 5 U.S.C. § 706(1).

32. As a result of the Agency's unlawful delay and failure to take mandatory actions, Plaintiff has been adversely affected and aggrieved.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiff requests that this Court enter judgment in its favor and against the Defendants as follows:

A.  declaring that the Agency's aforementioned failures and omissions constitute agency action "unlawfully withheld" and "unreasonably delayed," in violation of the APA, 5 U.S.C. § 706(1);

B.  compelling the Agency to take required agency action in response to the Petition by a Court-ordered deadline;

C.  awarding Plaintiff its reasonable costs and attorney's fees; and

D.  granting such other and further relief as the Court deems just and proper.

Respectfully submitted,

/s/ Delcianna Winders____
Delcianna Winders (D.C. Bar No. 488056)
PETA Foundation
1536 16th Street, N.W.

Washington, DC 20036
202-309-4697
delciannaw@petaf.org

Jeffrey S. Kerr (D.C. Bar No. 420323)
PETA Foundation
1536 16th Street, N.W.
Washington, DC 20036
202-540-2171
jeffk@petaf.org

Jared Goodman (D.C. Bar. No. 1011876)
PETA Foundation
1536 16th Street, N.W.
Washington, DC 20036
202-540-2204
jaredg@petaf.org

Attorneys for Plaintiff

Dated: October 21, 2013